IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA                                             PLAINTIFF

vs.                          Civil No. 6:11-CR-60015

JUAN VALENCIA                                                        DEFENDANT

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before this Court is Defendant Valencia's Motion to Suppress.  ECF No. 12.[1]  This Motion was filed on July 19, 2011, and the Government responded to this Motion on July 22, 2011.  ECF No. 14.  The Court held a hearing on this Motion on July 26, 2011 in Hot Springs, Arkansas.  All Parties appeared at this hearing, and Defendant Valencia was represented by counsel.  At this hearing, Officer Andy Parker and Mrs. Lori Ann Butler-Valencia testified.  Trial in this matter is currently set for October 13, 2011.  ECF No. 11.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2009), the Honorable Robert T. Dawson referred this Motion to this Court for the purpose of making a report and recommendation.  The Court, having reviewed all the relevant briefing and testimony at the hearing, recommends this Motion be **DENIED** in its entirety.

**1. Background**[2]

On March 29, 2011, officers of the Immigrations and Customs Enforcement ("ICE") Fugitive Operations Team from the Little Rock Field Office went to 1021 Jefferson Street, Malvern,

---

[1] The docket entries are referenced by "ECF No. ____."

[2] The "Background" is taken from the Parties' briefing as well as the testimony provided at the hearing in this matter.

Arkansas, in an attempt to locate Marco Antonio "Chapo" Valencia in order to ascertain his citizenship and immigration status. Marco Valencia had previously been arrested at this address.

After the ICE officers arrived at the Jefferson Street residence, they observed two Hispanic males exit and re-enter the residence at approximately 5:50 a.m. Following this, at approximately 6:00 a.m., the ICE officers approached the residence and knocked on the door. A female, later identified as Lori Ann Butler-Valencia, answered the door. The ICE officers identified themselves and asked if they could enter the home and speak with her. Mrs. Butler-Valencia agreed to the ICE officers coming into her home.

After entering the residence, the ICE officers asked Mrs. Butler-Valencia if she was alone in the home. Mrs. Butler-Valencia stated she was alone in the house and invited the officers to look around. The ICE officers asked Mrs. Butler-Valencia where the two men who previously entered the home were located. Mrs. Butler-Valencia stated she had been asleep and was not aware of the men. Mrs. Butler-Valencia allowed the officers to search the home. The officers performed a search of the bedrooms and closets during which time they observed a large amount of ammunition in the main bedroom closet. The officers did not find any other persons in the home.

The ICE officers then asked Mrs. Butler-Valencia if there were any guns in the home. Mrs. Butler-Valencia indicated there were, and she took the ICE officers to a gun cabinet in her bedroom. Mrs. Butler-Valencia then unlocked the gun cabinet. The ICE officers observed five firearms in the gun cabinet. Mrs. Butler-Valencia stated she had purchased two them for her husband, Defendant Juan Valencia, and he had accompanied her to the gun shop to purchase them. However, she was unaware of two firearms contained in the gun cabinet, a Ruger MOD M77 rifle and a High Point Firearms C9 pistol and thought they might be her fathers. Mrs. Butler-Valencia stated the gun

cabinet belonged to the Defendant and that he and herself only had access to the gun cabinet.

Following this, the ICE officers asked Mrs. Butler-Valencia about the immigration status of the Defendant. Mrs. Butler-Valencia stated she was in the process of petitioning for citizenship for the Defendant who was still and illegal alien. The ICE officers then advised Mrs. Butler-Valencia of her *Miranda* rights. Mrs. Butler-Valencia waived these rights and continued her cooperation with the ICE officers. This occurred approximately 20 minutes after Mrs. Butler-Valencia allowed the ICE officers to enter her home.

The ICE officers then informed Mrs. Butler-Valencia that it was against the law for an American citizen to purchase guns for an illegal alien. Mrs. Butler-Valencia indicated she was unaware of this law. Mrs. Butler-Valencia was also told by the ICE officers that it was against the law for an illegal alien to possess a firearm. The officers informed Mrs. Butler-Valencia that they were going to remove the firearms from her home pending further investigation. The ICE officers removed the weapons from the home of Mrs. Butler-Valencia approximately 55 minutes after entering.

## 2. Applicable Law

A valid search may be made without a warrant and without probable cause if the person in control of the premises has given voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Zamoran-Coronel*, 231 F.3d 466 (8th Cir. 2000). "Unlike the waiver of constitutional rights associated with a fair trial, consent to a police search need only be voluntary, and the party giving consent need not be fully aware of his or her constitutional rights." *See United States v. Lee*, 356 F.3d 831, 833-34 (8th Cir. 2003). The issue of whether consent was voluntary is a question of fact which requires an intensive inquiry, and courts

must conduct an inquiry to look at a number of different considerations, none of which standing alone is dispositive. *Id*. The government has the burden of showing that consent was voluntary. *Id*.

Consent is voluntary "if it was 'the product of an essentially free and unconstrained choice by its maker,' rather than 'the product of duress or coercion, express or implied.'" *See United States v. Chaidez*, 906 F.2d 377, 380-81 (8th Cir.1990) (quoting *Bustamonte*, 93 S.Ct. at 2047). This determination depends upon the totality of the circumstances in a particular case, including both the characteristics of the accused and the details of the interrogation. *Id.* Characteristics of a defendant relevant to the voluntariness of his consent include (1) his age, (2) his general intelligence and education, (3) whether he was intoxicated or under the influence of drugs when he consented, (4) whether he consented after being informed of his right to withhold consent or of his Miranda rights, and (5) whether, because he had been previously arrested, he was aware of the protections afforded to suspected criminals by the legal system. *United States v. Urbina*, 431 F.3d 305, 309 (8th Cir. 2005). Additional factors used in examining the environment in which consent was given include whether the defendant (1) was detained and questioned for a long or short time, (2) was threatened, physically intimidated, or punished by police, (3) relied upon promises or misrepresentations made by the police, (4) was in custody or under arrest when the consent was given, (5) was in a public or secluded place, or (6) either objected to the search or stood by silently while the search occurred. *Id.*

**3. Discussion**

Defendant filed the present Motion to Suppress alleging the consent to search allegedly given by his wife, Lori Ann Butler-Valencia, was not voluntary. ECF No 12. However, in reviewing the evidence, it shows Mrs. Bulter-Valencia freely and voluntarily consented to the search of her home.

There is nothing in the evidence indicates that Mrs. Butler-Valencia was in any way coerced, forced, or tricked into granting consent to search her home. Mrs. Butler-Valencia, was an adult, was not under the influence of any drug at the time of search, and had sufficient mental capacity to consent. Mrs. Butler-Valencia did not indicate she had any difficulty in understanding the officers conducting the search or making herself understood.

The officers conducting the search approached the home and knocked on the front door. Officer Parker testified that the officers identified themselves when Mrs. Butler-Valencia answered the door.[3] The officers asked if they could enter the home and Mrs. Butler-Valencia agreed and allowed them into her home.

According to Officer Parker, upon entering the home, they asked Mrs. Butler-Valecia if they could look around the house for the two men they had earlier seen enter the home. Officer Parker testified Mrs. Butler-Valencia voluntarily offered for the officers to look around her house. According to Mrs. Butler-Valencia, although she could not say for sure, she did state it was possible the officers asked for permission to search her house.

After looking around the house, the officers asked Mrs. Butler-Valencia if there were any guns located in the home. Mrs. Butler-Valencia stated there were guns in a locked gun cabinet in her home. Mrs Butler-Valencia retrieved her key and unlocked the gun cabinet for the officers. It was during this search of the gun cabinet that several guns were seized by the officers.

Additionally, the evidence shows Mrs. Butler-Valencia was never detained, handcuffed, or placed under arrest during the search of her home. Furthermore, there is no indication she was in any way coerced into consenting to the search of her home. Finally, at no time did Mrs.

---

[3]Although Mrs. Butler-Valencia testified the officers didn't identify themselves, she did state the officers were dressed in uniforms and recalls seeing "ICE" on the sleeves.

Butler-Valencia ever seek to terminate questioning or limit or revoke the search.

### 4. Conclusion

In accordance with the foregoing, this Court recommends Defendant Valencia's Motion to Suppress (ECF No. 12) be **DENIED.**

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger** *de novo* **review by the district court.**  *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

**ENTERED this 22nd day of August, 2011.**

                                               s/  Barry A. Bryant
                                               HON. BARRY A. BRYANT
                                               U. S. MAGISTRATE JUDGE